569 So.2d 106 (1990)
Lina McDonald, Widow of Cheston McDONALD
v.
NEW ORLEANS PRIVATE PATROL.
No. 90-CA-0250.
Court of Appeal of Louisiana, Fourth Circuit.
October 11, 1990.
*107 Marcia Finkelstein, New Orleans, for plaintiff/appellee.
Charles R. Capdeville, Metairie, for defendants/appellants.
Before CIACCIO, WILLIAMS, and BECKER, JJ.
BECKER, Judge.
Defendants/appellants, New Orleans Private Patrol and Continental Insurance Company, appeal the judgment of the trial court awarding plaintiff worker's compensation disability and death benefits. Plaintiff's husband, the late Cheston McDonald, worked as a security guard under the employ of New Orleans Private Patrol, at the Johns-Manville plant from 1957 until he retired in 1975. Plaintiff instituted this action for worker's compensation benefits on May 20, 1985, alleging that Cheston McDonald's death on March 7, 1984 was either caused or contributed to by the exposure to asbestos dust experienced by Mr. McDonald during his employment with New Orleans Private Patrol.
After a trial on the merits, the trial court awarded plaintiff total disability benefits from May 16, 1975 through March 7, 1984, along with death benefits from March 7, 1984 through June 21, 1986, together with medical benefits of $47,285.00, burial expenses $2,904.20, and legal interest thereon.
Defendants now seek review of this judgment alleging that the trial court erred in (1) not finding the claim for disability benefits prescribed; (2) not finding the claim for death benefits preempted; and (3) not according great weight to the testimony of Dr. Grimstad, one of Mr. McDonald's treating physicians.
Defendants argue that plaintiff's claim for disability benefits had prescribed when suit was filed in May, 1985. L.S.A.-R.S. 23:1031.1(E) provides in pertinent part,
"All claims for disability arising from an occupational disease are barred unless the employee files a claim with his employer within six months of the date that:
(a) The disease manifested itself.
(b) The employee is disabled from working as a result of the disease.
(c) The employee knows or has reasonable grounds to believe that the disease is occupationally related.
Notice filed with the compensation insurer of such employer shall constitute a claim as required herein."
The jurisprudence interpreting this statute has consistently held that all three conditions must exist for prescription to commence. Thornell v. Payne and Keller, Inc., 442 So.2d 536 (La.App. 1st Cir.1983), *108 writ denied, 445 So.2d 1231 (La.1984); Naquin v. Johns-Manville Sales Corp., 456 So.2d 665 (La.App. 5th Cir.1984); Brown v. City of Monroe, 521 So.2d 780 (La.App. 2nd Cir.1988).
In the present case, plaintiff alleges that decedent did not know that his respiratory problems were related to his employment until November 28, 1983 when Dr. Velma Campbell examined him and determined that Mr. McDonald's "exposure to asbestos contributed significantly to his present condition." A review of the trial record indicated that Dr. Campbell was the first physician to inform Mr. McDonald that his respiratory problems were employment related. Thus, Mr. McDonald had no knowledge or reasonable belief that his illness was employment related until November 28, 1983.
Mr. McDonald, through his attorney, notified New Orleans Private Patrol on December 5, 1983 of his intent to seek worker's compensation disability benefits. Clearly, this notice was provided to the employer within six months of Dr. Campbell's diagnosis. Thus, we can not say that the trial court erred in denying defendants' exception of prescription.
Defendants also argue that the trial court erred in denying their exception of peremption in regards to plaintiff's claim for death benefits. Defendants rely upon L.S.A.-R.S. 23:1231, which provides in pertinent part,
"For injury causing death within two years after the accident, there shall be paid to the legal dependent of the employee, actually and wholly dependent upon his earnings for support at the time of the accident and death, a weekly sum as herein after provided...."
Defendants contend plaintiff's claim for death benefits is perempted since Mr. McDonald's death occurred more than two years after his retirement. However, defendant's reliance on R.S. 23:1231 is misplaced.
L.S.A.-R.S. 23:1231 is a general statute within the section of the worker's compensation act concerning the entitlement of benefits. L.S.A.-R.S. 23:1031.1 specifically pertains to the benefits available to those employees suffering from occupational diseases. R.S. 23:1031.1(F) provides that
"All claims for death arising from an occupational disease are barred unless the dependent or dependents as set out herein file a claim with the deseased's employer within six months of the date of death of such employee or within six months of the date claimant has reasonable grounds to believe that the death resulted from an occupational disease. Notice filed with the compensation insurer of such employer shall constitute a claim herein."
The general rule is that in cases of conflict between general and specific statutes, the special statute prevails. Giroir v. South Louisiana Medical Center, 453 So.2d 949 (La.App. 1st Cir.1984), affirmed in part; reversed in part on other grounds, 475 So.2d 1040 (La.1985). Furthermore, it is well settled that the worker's compensation statute is to be liberally interpreted in favor of the employee. Winzor v. Augenstein Const. Co., Inc., 378 So.2d 470 (La. App. 3rd Cir.1979), writ denied 379 So.2d 1103 (La.1980); Huett v. Insurance Company of North America, 329 So.2d 222 (La.App. 4th Cir.1976), writ denied, 332 So.2d 863 (La.1976); Grey v. Avondale Service Foundry, 305 So.2d 639 (La.App. 4th Cir.1974); Simmons v. Liberty Mutual Insurance Company, 185 So.2d 822 (La.App. 3th Cir.1966). Therefore, we find that R.S. 23:1031.1 is the applicable statute in setting out time limitations on death claims arising from occupational diseases. Plaintiff, in this case, notified decedent's employer approximately one month after decedent's death, of her intent to seek death benefits available under R.S. 23:1031.1. Accordingly, the trial court was correct in denying defendants' exception of peremption.
Defendants further contend that the trial judge erred in not according great weight to the testimony of Dr. Grimstad, one of Mr. McDonald's treating physicians. Plaintiff acknowledges that Dr. Grimstad began treating Mr. McDonald for his respiratory problems in 1981. He attended Mr. McDonald during McDonald's last illness *109 and signed the death certificate, certifying the cause of death to be chronic obstructive pulmonary disease. Dr. Grimstad was of the opinion that Mr. McDonald suffered from obstructive lung disease or emphysema with a bronchitic component.
It is well settled that the testimony of the treating physician is to be given more weight than the testimony of a physician who examines the patient only one or twice. However, the treating physician's testimony must also be weighed in light of other credible evidence. The weight to be afforded such testimony is largely dependent upon the physician's qualifications and the facts upon which his opinion is based. Schouest v. J. Roy McDermott, 411 So.2d 1042 (La.1982); Latiolais v. Jernigan Bros. Inc., 520 So.2d 1126 (La.App. 3rd Cir.1987); Walker v. Marcev, 427 So.2d 678 (La.App. 4th Cir.1983), writ denied, 433 So.2d 182 (La.1983); Vicknair v. Southern Farm Bureau Casualty Insurance Company, 292 So.2d 747 (La.App. 4th Cir.1974), writ denied, 296 So.2d 838 (La.1974).
In the present case, it appears that Dr. Grimstad was not fully aware of the factors which contributed to Mr. McDonald's condition. Dr. Grimstad acknowledged at trial that he did not know of the decedent's continual exposure to asbestos. This information had never been relayed to Dr. Grimstad by Mr. McDonald. The other physicians who testified all recognized the significance of a history of exposure to asbestos in the diagnosis of asbestosis. Dr. Velma Campbell examined Cheston McDonald in April 1983. After reviewing McDonald's medical records and his history of asbestos exposure, Dr. Campbell concluded that Mr. McDonald's "exposure to asbestos contributed significantly" to his respiratory problems.
Plaintiff also called as an expert witness, Dr. Lawrence Miller. Dr. Miller, after reviewing Mr. McDonald's medical records, and examining a 1983 chest x-ray, concluded that Mr. McDonald suffered from chronic obstructive lung disease and asbestosis. Dr. Miller testified that the asbestosis was a significant part of Mr. McDonald's respiratory disease. Miller stated that he based his diagnosis of asbestosis on McDonald's exposure history and the 1983 x-ray which showed increased interstitial markings. Dr. Miller also relied upon the reports from x-rays taken from 1973 to June 1983. He testified that the x-ray reports showed a continual increase in interstitial type changes from 1973 to 1983.
Dr. Robert Jones, defendant's expert, after reviewing the same medical records, concluded that McDonald suffered from chronic obstructive lung disease, which was a combination of emphysema and bronchitis caused by cigarette smoking. Jones acknowledged that the 1983 chest x-ray revealed some pleural plaques lining the chest cavity which was probably caused by McDonald's exposure from asbestos. However, Dr. Jones did not believe that the x-ray revealed any lung disease from asbestos.
Considering the significance these physicians gave to the history of exposure to asbestos in making a diagnosis of asbestosis, we can not say that the trial judge erred in the weight he gave to Dr. Grimstad's opinion. There is no question that Cheston McDonald was exposed to asbestos while employed as a security guard at the Johns-Manville plant. Both Mrs. McDonald, and her son, Cheston, Jr., testified that the decedent would come home from work with dust in his clothes and hair. Mrs. McDonald stated that she would have to shake the dust from the clothes prior to washing or else the dust would clog the washing machine drain. Cheston McDonald, Jr., testified that on occasion he would go to work with his father. He stated that, on those occasions, there was a heavy concentration of asbestos dust in the air at the plant. Cheston, Jr. also stated that his father would make hourly rounds, and punch clocks at various sites at the plant. Further, decedent was not advised to wear, nor provided with any respiratory equipment at work. Mr. McDonald would use an air hose to blow the dust off his clothing during the work day.
The plaintiff in a worker's compensation action based on an occupational disease must establish by a preponderance of *110 the evidence that there is a disability which is related to the employment related disease. LaCoste v. J. Ray McDermott & Co., 250 La. 43, 193 So.2d 779 (La.1967); Laurendine v. Fischbach & Moore, Inc., 398 So.2d 1220 (La.App. 4th Cir.1981). Similarly, the plaintiff must show that he contracted the disease during the course of his employment and that the disease was the result of the work performed. Bates v. Bituminous Casualty Corp., 266 So.2d 556 (La.App. 3rd Cir.1972). It is sufficient that he establishes the cause of his disability by a reasonable probability. Bryant v. Magnolia Garment Co., Inc., 307 So.2d 395 (La.App. 2nd Cir.1978).
In deciding whether a plaintiff has proven the claimed disability, the totality of the evidence must be considered. It is the trial court's function to determine the weight that is to be accorded to the medical and lay testimony. Further, where there is a conflict in the testimony, reasonable evaluations and reasonable inferences of fact should not be disturbed unless such factual conclusions are clearly wrong. Canter v. Koehring, 283 So.2d 716 (La.1973); Percy v. Perkins, 468 So.2d 815 (La.App. 1st Cir. 1985), writ denied, 475 So.2d 355 (La.1985).
A review of the trial transcript reveals that the trial court did not commit manifest error in rendering judgment in favor of the plaintiff. Mrs. McDonald has proved by a preponderance of the evidence that her husband, the late Cheston McDonald, suffered from asbestosis, and that the disease of asbestosis contributed significantly to his death. The trial court did not abuse its discretion in choosing to accept the medical opinions of Dr. Velma Campbell and Dr. Lawrence Miller. Their opinions were supported by the lay testimony of Mrs. McDonald and Cheston McDonald, Jr. concerning decedent's exposure to asbestos dust.
Accordingly, the judgment of the trial court is affirmed. All costs to be borne by defendants/appellants.
AFFIRMED.