672 So.2d 1045 (1996)
Lloyd F. PRICE
v.
The CITY OF NEW ORLEANS.
No. 95-CA-1851.
Court of Appeal of Louisiana, Fourth Circuit.
March 27, 1996.
*1046 Magdalen Blessey Bickford, Louis L. Robein, Jr., Robein, Urann & Lurye, Metairie, for appellee.
Avis Marie Russell, City Attorney, Milton Osborne, Jr., Deputy City Attorney, New Orleans, for appellant.
Before SCHOTT, C.J., and LOBRANO and ARMSTRONG, JJ.
*1047 LOBRANO, Judge.
This appeal arises from a judgment in favor of plaintiff-appellee, Lloyd F. Price, and against defendant-appellant, the City of New Orleans, for medical expenses incurred as a result of an occupational disease contracted by plaintiff during his employment with the City of New Orleans.

FACTS AND PROCEDURAL HISTORY:
Lloyd F. Price is employed with the City of New Orleans as a firefighter. At the time of trial, he had been a career firefighter for eighteen years. In addition to fighting fires, his duties included assisting and rendering first aid to anyone who came to the fire station seeking such help. From 1976 to 1989 Price was assigned to Engine Company 8, located at Florida Avenue and Desire Street, near the Florida/Desire public housing complex. During the course and scope of his employment, Price had contact with blood and other bodily fluids from injured people who sought first aid at the fire station. After rendering aid, Price's duties also required him to clean up whatever blood was left on the premises. Price often sustained minor cuts and scrapes while cleansing and maintaining the fire equipment.
In the summer of 1990, Price became aware of a health problem when he donated blood for his step daughter who had leukemia. He was referred to Dr. Catherine Murray, a specialist in infectious diseases. Price was examined by Dr. Murray on October 18, 1991. Suspecting that he may have contracted hepatitis C, Dr. Murray investigated all possible risk factors that may have been present in Price's lifestyle. Price denied having had any blood transfusions. His wife had no blood transfusions. He had no military service and his travel was limited to Belize. He was not a drug user and had no family history of liver disease.
In December of 1991, Dr. Murray performed a liver biopsy to confirm her suspicions. The results revealed that Price suffered from chronic active hepatitis C, a viral infection transmitted by blood and bodily secretions. The diagnosis was confirmed by two pathologists.
Price was given a poor prognosis. He is likely to develop cirrhosis of the liver and liver failure resulting in a shortened life span. A liver transplant is not an option.
Because Price had no other risk factors for the disease, Dr. Murray concluded that Price contracted the disease at work by coming into contact with contaminated blood.
Initially Price filed claims for his medical expenses with the City's group insurance program. After his final diagnosis and cause of the disease was determined, Price sought to have the City pay the medical expenses through its Worker's Compensation program. The City refused and this suit was filed on May 6, 1992.
On October 19, 1992, the City wrote Price a letter accepting the diagnosis of hepatitis C as a compensable work related injury. The City requested copies of all related medical expenses to process the claim as "expeditiously as possible." This letter was faxed to the administrative hearing officer assigned the case. The hearing officer then instructed the parties to confect a compromise agreement by November 2, 1992. The compromise documents were prepared and submitted to the City. The City never executed the agreement.
Price then filed a rule to show cause why the City should not be compelled to execute the compromise agreement. Following a hearing on the matter, judgment was rendered compelling the City to execute the appropriate settlement documents. That judgment was appealed to this Court. However, we dismissed the City's appeal pursuant to Louisiana Code of Civil Procedure article 2085.[1] The Supreme Court subsequently *1048 reversed our ruling and remanded for a hearing on the merits.[2]
A hearing on the merits of Price's claim was held on September 22, 1994. Judgment was rendered in his favor finding that the illness was compensable and that he was entitled to medical expenses. Attorney's fees in the amount of $5,000.00, as well as 12% penalties, were awarded. Dr. Murray's deposition fee was set at $500.00.
The City perfects the instant appeal asserting the following assignments of error:
1) The trial court erred in finding that Price's claim had not prescribed;
2) The trial court erred in finding that hepatitis C was an occupational disease;
3) The trial court erred in finding that Price contracted hepatitis C as a result of his employment with the City;
4) The trial court erred in awarding attorney's fees and penalties;
5) The trial court erred in ordering the City to pay all costs;
6) The trial court erred in ordering the City to pay Dr. Murray's expert fee in the amount of $500.00;
7) The trial court erred in not admitting Dr. Lutz's testimony.
In addition, for the first time the City raised the defense of no cause of action during oral argument. In support, it cites La Coste v. J. Ray McDermott & Co., 250 La. 43, 193 So.2d 779 (1967).
Plaintiff answered the appeal seeking additional attorney fees for the work done in connection with this appeal, as well as damages for frivolous appeal.
The standard of appellate review in worker's compensation cases is the clearly wrong or manifest error standard. Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94), 630 So.2d 733. The reasonable credibility determinations and inferences of fact made by the hearing officer must be accepted by this court even though there exists conflicting testimony which may support other inferences. Id. Accordingly, we review each of the City's specifications of error.

ASSIGNMENT OF ERROR 1:

PRESCRIPTION:
The City asserts that Price's claim for medical benefits has prescribed. In support, it relies on the six month prescriptive period of Revised Statute 23:1031.1(E), and alternatively, on the one year period of Revised Statute 23:1209(C). Under either statute, the City contends that prescription began to run in May of 1990 when Price learned of his health problems. Since suit was not filed until May of 1992, the city argues it was untimely.
Revised Statute 23:1031.1(E) provides a six month prescriptive period for "all claims for disability arising from an occupational disease." Prescription begins when the "employee knows or has reasonable grounds to believe that the disease is occupationally related." La.R.S. 23:1031.1(E)(c). Revised Statute 23:1209(C) provides that all claims for medical benefits payable pursuant to R.S. 23:1203 (the statutory duty imposed on employers to furnish medical benefits) prescribe in one year from the date of the accident.
While R.S. 23:1209(C) deals with claims for medical expenses which arise because of an accident in the work place, arguably R.S. 23:1103.1(E) would be applicable in this case because it is special legislation dealing with occupational diseases. However, the first sentence of that statute might also suggest that it is applicable only to "claims for disability", and not medical expenses, since that is what it says. See, Duplechain v. Gulf States Utility Co., 468 So.2d 1386 (La.App. 3rd Cir.1985). However, under the facts of the instant case, we need not decide which statute is applicable since under either, prescription did not begin its toll until December of 1991 when Dr. Murray confirmed the probable cause of hepatitis C as being work related.
In December of 1991, Dr. Murray performed a liver biopsy. Her testimony is as follows:
Q. You said initially, when he presented to you, he had some abnormal liver functions, *1049 and he was sent to you to determine the cause, I believe; is that a fair statement?
A. Yes.
Q. So before he came to you, to the best of your knowledge, there's no determination as to the cause of his abnormal liver functions?
A. There was the positive Hepatitis C antibody which came with him.
Q. Right.
A. But that indicates only exposure to hepatitis. Not a causal relationship.
Q. All right. And it was only after you sat down with him, gave him a physical, took his history, that a determination as to the most probable cause was actually determined; it that correct?
A. Really it was after the liver biopsy.
Q. Okay. And you have now been subject to an exhaustive cross-examination by Mr. Osborne. And after that, has your opinion changed as to the most probable cause of Mr. Price's Hepatitis C virus?
A. My opinion has not changed.
Q. And that is that the most probable cause of his condition is his occupational exposure to blood fluids and blood?
A. Correct.
While not all diseases suffered by working individuals are occupational diseases, the diagnosis of a disease as an "occupational" disease requires expert testimony. No court would find an "occupational disease" solely on the basis of lay testimony. Williams v. Public Grain Elevator of New Orleans, Inc., 417 So.2d 398, 399 (La.App. 4th Cir.1982), writ not considered, 422 So.2d 160 (La.1982).
After considering the uncontradicted testimony of both Price and Dr. Murray, the hearing officer concluded that it wasn't until December of 1991 that Price learned of the connexity between his disease and his occupation and thus prescription began to run. Given the record before us we cannot say the hearing officer's determination was clearly wrong or manifestly erroneous. To find otherwise, would require the lay employee to diagnose his own illness as an "occupational disease" for purposes of prescription. See, Williams supra. Since Price filed his suit for medical expenses on May 6, 1992, it was timely under either statute.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR 2 AND 3:
In these assignments of error the City asserts that the evidence is insufficient to conclude that hepatitis C is a compensable disease and that Price contracted it as a result of his employment as a firefighter. We disagree.
Louisiana Revised Statute 23:1031.1(B) provides:
"B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section."
One of the purposes of the above statute is to relieve employees of the almost impossible task of proving an "accident" in connection with an occupational disease. Duplechain v. Gulf States Utility Co., 468 So.2d 1386, 1388 (La.App. 3rd Cir.1985). An occupational disease has been defined as the result of a series of events, often imperceptible in nature, which are eventually evidenced in the manifestation of a disability. Vargas v. Daniell Battery Mfg. Co. Inc., 93-1249 (La.App. 1st Cir. 5/20/94), 636 So.2d 1194.
The plaintiff in a worker's compensation action based on an occupational disease must establish by a preponderance of the evidence that there is a disability which is related to the employment related disease; that he contracted the disease during the course of his employment and that the disease is a result of the work performed. McDonald v. New Orleans Private Patrol, 569 So.2d 106, 109-110 (La.App. 4th Cir.1990). It is sufficient that he establishes the cause *1050 of his disability by a reasonable probability. McDonald, supra at p. 110. In deciding whether a plaintiff has proven the claimed disability, the totality of the evidence must be considered. It is the function of the trial court to determine the weight to be accorded to the medical and lay testimony. Where there is a conflict in the testimony, reasonable evaluations and reasonable inferences of fact by the trial court should not be disturbed on appeal unless such factual conclusions are clearly wrong. McDonald, supra at p. 110, citing, Canter v. Koehring, 283 So.2d 716 (La.1973).
Although in the instant case plaintiff is seeking only medical expenses and not disability, his burden of proof is no different. The record evidence shows that he met that burden.
Dr. Catherine Murray, an internist, board certified in gastroenterology, testified that she first suspected that Price had hepatitis in May, 1990. Price was first diagnosed with abnormal liver function in 1989. In order to better diagnose his condition, Dr. Murray took Price's history to determine the possible cause of the disease. Price informed her that he never had any blood transfusions, was never in the military, had limited travel outside the country and was not a drug or alcohol abuser. He also told her he had no extramarital affairs and his wife never had a blood transfusion. Price had no family history of liver disease and was not taking medications, except Pepcid. Dr. Murray performed a liver biopsy on Price in December, 1991. The biopsy positively revealed chronic active hepatitis C. The only risk factor associated with Price was his employment related contact with blood products. In her expert opinion, Dr. Murray concluded that the cause of Price's hepatitis was contact with contaminated blood at work. By handling the blood products he could have contracted the disease by touching his eyes, mouth or through an opening in the skin.
Price testified that as a fireman, his duties included rendering first aid to anyone seeking help at the fire station. As often as once per week, and sometimes more frequently, Price rendered first aid to bleeding subjects. The City did not provide protective devices. Working on the fire equipment often resulted in cuts and scratches to his person. After treating various injuries, he also assisted in the clean up that followed. He stated that it was in the summer of 1990 that he was first made aware of a health problem after he tried to donate blood. After the liver biopsy in December of 1991 he was positively diagnosed with hepatitis C.
William Sanchez and Rodney Beaudean, both supervisors of Price, testified that, as a fireman, Price was required to render first aid. Both stated that they knew of their own knowledge that Price did render first aid to bleeding subjects and did help in the clean up that followed. Sanchez stated that the area of Engine Station 8 is a violent area. Often people were treated for gun shot and knife wounds which produced a lot of bleeding. Sanchez stated that no immunizations against hepatitis were given to the firemen by the City and the City did not even provide gloves until 1991 or 1992. Beaudean testified that only one pair of gloves was issued for each station and often they were not available. He corroborated Price's testimony that firemen sustained cuts and scratches in the course of maintaining the fire equipment. He also testified that he never knew Price to use drugs or have extramarital affairs.
Bonnie Price also testified. She stated that she is negative for hepatitis and that she has never known her husband to have extramarital affairs or use intravenous drugs.
The evidence supports the conclusion that, under the facts of this case, the disease contracted by plaintiff is an occupational disease within the meaning of R.S. 23:1031.1(B). The evidence also substantiates the fact that Price contracted hepatitis C as a result of, and during the course of, his employment as a fireman with the City of New Orleans. There is no manifest error in the hearing officer's determination of this issue.
These assignments of error are without merit.

ASSIGNMENTS OF ERROR 4, 5 AND 6:
The City asserts it was error for the trial court to award attorney's fees, penalties, *1051 costs and Dr. Murray's expert fee. Specifically, the City argues that Price's right to medical benefits was reasonably controverted and the City's refusal to pay was not arbitrary, capricious or without probable cause.

Penalties and attorney's fees:
At the time this matter was tried, La.R.S. 23:1201(E) provided for 12% penalties for the untimely payment of benefits by the employer and R.S. 23:1201.2 provided for the award of attorney fees where the refusal to pay was arbitrary or capricious.[3] The City argues that it had a reasonable basis to controvert plaintiff's claim, and therefore its refusal to pay was not arbitrary or capricious. We disagree.
The hearing officer noted that the City was aware of Price's claim in March or April of 1992 and that it was work related. The City made no effort to investigate the claim, require medical examinations by its own physicians or in any way review Price's condition. The City's only attempt to counter the factual and medical evidence presented by Price was its attempt to elicit testimony from Dr. Bronson Lutz, the City Health Director. Dr. Lutz, however, never examined Price and stated that he did not know he was going to testify until thirty minutes prior to the start of trial.
The determination of whether an award of penalties and attorney fees is warranted is a question of fact which shall not be disturbed unless manifestly erroneous or clearly wrong. Lemoine v. Schwegmann Giant Supermarkets, 607 So.2d 708, 713 (La. App. 4th Cir.1992), writ denied, 609 So.2d 258 (La.1992). Given the evidence in the instant case, we cannot say the hearing officer was clearly wrong in awarding penalties and attorney fees.

Costs and expert fees:
A worker's compensation hearing officer has the authority to award costs and expert fees. La.R.S. 23:1317(B). There is no error in the award made in this case.

ASSIGNMENT OF ERROR 7:
In his reasons for judgment, the hearing officer stated:
... At trial, the testimony of Dr. Lutz on behalf of defendant was not accepted as evidence because of defendant's failure to comply with discovery. If, however, Dr. Lutz opined that the Hepatitis C was not work related and his opinion should be accepted as evidence, it is an opinion that was silent until the day of trial and certainly cannot be deemed a timely response or reason for denial by defendant.
The City asserts that Dr. Lutz's testimony should have been admitted. Specifically, the City argues that Price was given an opportunity to depose Dr. Lutz and present evidence to refute his testimony. We disagree.
Rule 2157 Sec. 3(E), entitled "PRETRIAL PROCEDURE", of the Hearing Officer's Rules of Procedure provides:
"Section 3. Each Pretrial Statement shall be signed by the party or counsel preparing it and shall set forth:
* * * * * *
E. A list of witnesses each party may call and a short statement as to the nature but not to the content of their testimony, and whether their testimony will be offered live or by deposition. Except for the witnesses listed, no other witnesses may be called to testify except for good cause shown. This requirement shall not apply to impeachment and rebuttal witnesses."
A review of the record shows the City failed to comply with the mandate of Rule 2157 even after being ordered to do so by the hearing officer.
On May 19, 1994, following remand by the Supreme Court, a hearing date was set for August 10, 1994. On July 13, 1994, the City received Price's Request for Production of Documents and Interrogatories which requested a description of the testimony of all fact and expert witnesses for the City. In response, the City filed a Motion to Continue the hearing stating that Dr. Lutz would be out of the country until August 17, 1994 and *1052 also requested an extension of time to respond to discovery. Price opposed both motions and filed a Motion to Compel Responses and a second discovery request relating to Dr. Lutz being called as a witness.
On August 31, 1994, at the Motion to Compel hearing, the hearing officer ruled in Price's favor and ordered the City to respond to discovery by September 6, 1994. The City failed to respond up to the day of trial, September 22, 1994. As a result, the hearing officer refused to admit Dr. Lutz's testimony.[4]
In Zanca v. Exhibition Contractors, Co., 614 So.2d 325, 329 (La.App. 4th Cir.1993) this Court succinctly stated the law regarding the discretion afforded the hearing officer in the implementation of pre-trial orders:
Pursuant to the provisions of La.C.C.P. art. 1551, a court has wide discretion to provide for implementation of a pre-trial order and to insure that the terms of the pre-trial order are enforced. The purpose of having a pre-trial order was explained in Gilcrease v. Gilcrease, 438 So.2d 658, 662 (La.App. 2nd Cir.1983), writ denied, 442 So.2d 461 (La.1983), wherein our brethren of the Second Circuit stated:
La.C.C.P. art. 1551 outlines pre-trial conference procedure in Louisiana. The theory inherent in pre-trial procedure is to avoid surprise and to allow orderly disposition of the case. The pre-trial order, or as in this case the pre-trial agreement, controls the subsequent course of the action but can be modified at trial to prevent substantial injustice.... (cites omitted)
This need for an orderly disposition is particularly important in worker's compensation cases where the claimant has allegedly suffered injuries for which compensation may be sorely needed to offset lost income during a period of unemployment. For this reason, the same considerations underlying cases before a district court judge apply in worker's compensation cases.
The record shows the City, without good cause, blatantly refused to comply with the mandate of Rule 2157. For this reason we find no abuse of discretion in the hearing officer's refusal to admit Dr. Lutz's testimony.
This assignment of error is without merit.

No Cause of Action
During oral argument the City raised the exception of no cause of action arguing that medical expenses are not payable because Price is not disabled. Relying on La Coste v. J. Ray McDermott & Co., supra, the City contends that, as a matter of law, it cannot be responsible for medical expenses under the Worker's Compensation Act until a claimant suffers a disability. We disagree.
In La Coste, the plaintiff sought disability benefits under the compensation statute because he had contracted the occupational disease of silicosis. The court rejected his claim because he continued performing his same job, apparently with no difficulties, and thus was not disabled. There was no claim made for medical benefits and hence that issue was not addressed.
The court, in Graham v. Georgia-Pacific Corp., 26,165 (La.App. 2nd Cir. 9/23/94), p. 7, 643 So.2d 352, 358 recognized that a claimant's right to medical benefits is separate and distinct from his right to compensation and that "the claimant may recover medical expenses even though he is no longer entitled to weekly compensation." We agree with that principle. It is not necessary that a claimant seek disability benefits as a prerequisite to obtaining medical benefits. The exception of no cause of action is overruled.

Answer to the Appeal
Pursuant to Louisiana Code of Civil Procedure article 2133, Price has answered the appeal seeking attorney's fees and costs for frivolous appeal pursuant to Louisiana Code of Civil Procedure article 2164.
In assessing damages for a frivolous appeal, "... it must be manifest that the appeal was taken solely for delay or that appealing counsel does not sincerely believe in the view of law he advocates." Hellpenstell *1053 v. Bonnabel Hospital, 523 So.2d 887, 891 (La.App. 4th Cir.1988), writ den. 531 So.2d 282 (La.1988), citing Sherman v. B & G Crane Service, 455 So.2d 1275 (La.App. 4th Cir.1984) at 1278.
This Court is reluctant to grant frivolous appeal damages because of the chilling effect it may have on the appellate process, and we decline to do so in this case. However, we do award additional attorney fees for the defense of this appeal in the amount of $2,000.00.
The judgment in favor of plaintiff is amended to award an additional $2,000.00 in attorney fees. In all other respects, it is affirmed.
AMENDED AND AS AMENDED, AFFIRMED.
NOTES
[1] Price v. City of New Orleans, 93-1162 (La.App. 4th Cir. 2/11/94), 632 So.2d 836.

La.C.C.Pro. art. 2085 provides:
"An appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him. Confession of or acquiescence in part of a divisible judgment or in a favorable part of an indivisible judgment does not preclude an appeal as to other parts of such judgment."
[2] Price v. City of New Orleans, 94-0609 (La. 4/29/94), 637 So.2d 452.
[3] Both of those statutes were amended by Acts 1995, No. 1137. Although R.S. 23:1201(E) was redesignated subsection (F), the basic substantive provisions remain the same.
[4] The City proffered Dr. Lutz's testimony.