828 So.2d 165 (2002)
Kenda FITE, Plaintiff-Appellee
v.
LOUISIANA TITLE COMPANY, Defendant-Appellant.
Nos. 36,393-WCA, 36,394-WCA.
Court of Appeal of Louisiana, Second Circuit.
September 18, 2002.
Law Offices of Ronald F. Lattier, by Ronald F. Lattier, Shreveport, Corey L. Pierce, New Orleans, for Appellant.
*166 Julia A. Mann, Shreveport, for Appellee.
Before BROWN, KOSTELKA and HARRISON (Pro Tempore), JJ.
KOSTELKA, J.
Louisiana Title Company ("Louisiana Title") appeals that portion of the judgment of the Workers' Compensation Judge ("WCJ"), Parish of Caddo, in favor of Kenda Fite ("Fite"). For the following reasons, we reverse that portion of the judgment appealed by Louisiana Title.

Facts
Fite was employed by Louisiana Title as an abstractor for approximately three and one-half years. She claims that during the course and scope of her employment, she sustained occupational diseases to her upper extremities, specifically, bilateral carpal tunnel syndrome, lateral epicondylitis, and ulnar nerve neuropathy. Louisiana Title investigated Fite's alleged injuries and paid her workers' compensation benefits from October 1, 1997 through June 1, 2000.
In January 1999, Fite filed a disputed claim for compensation, requesting workers' compensation benefits for a September 11, 1997 injury/occupational disease of her wrist and left thumb. She also alleged that she was entitled to indemnity benefits, vocational rehabilitation, penalties and attorney fees. Subsequently, she filed a second disputed claim for compensation, wherein she sought the maximum weekly compensation benefits, medical treatment recommended by her treating physician, vocational rehabilitation, and penalties and attorney fees.
A trial of the matter was conducted at which Fite did not call any expert medical witnesses but relied on medical reports. At the close of Fite's portion of the case, Louisiana Title moved for an involuntary dismissal which was subsequently denied. In oral reasons for judgment, the WCJ determined that both the bilateral carpal tunnel syndrome and the lateral epicondylitis condition were employment-related, as were the resulting surgeries for each. The WCJ concluded, however, that an ulnar nerve neuropathy was not employment-related, and thus, the associated medical treatment of that condition was also not deemed to be employment-related.[1] This appeal by Louisiana Title ensued.

Discussion
Louisiana Title raises three related assignments of error regarding the finding that Fite had an occupational disease or diseases, as defined by La. R.S. 23:1031.1. First, it argues that, because Fite failed to prove by a preponderance of the evidence that she suffered from an occupational disease, the trial court erred in denying Louisiana Title's motion for involuntary dismissal upon the conclusion of Fite's presentation of her evidence. Second, it maintains that Fite failed to prove by a preponderance of the evidence that her alleged ailments were occupationally related. In its third assignment of error, Louisiana Title argues that it was error for the WCJ to award Fite supplemental earnings benefits when she failed to prove her claims by a preponderance of the evidence.
A claimant asserting an occupational disease must prove by a preponderance of evidence that there is a disability which is related to an employment-related disease, that the disease was contracted during the course of employment and that the disease is a result of the work performed. Hymes v. Monroe Mack Sales, 28,768 (La.App.2d Cir.10/30/96), 682 So.2d *167 871; Price v. City of New Orleans, 95-1851 (La.App. 4th Cir.03/27/96), 672 So.2d 1045, writ denied, 96-1016 (La.10/25/96), 681 So.2d 360. The causal link between an employee's occupational disease and work-related duties must be established by a reasonable probability. Hymes, supra; Shields v. GNB Technologies, Inc., 33,911 (La.App.2d Cir.10/04/00), 768 So.2d 774; Seal v. Gaylord Container Corp., 97-0688 (La.12/02/97), 704 So.2d 1161. The claimant will fail if there is only a possibility that the employment caused the disease, or if other causes not related to the employment are just as likely to have caused the disease. Hymes, supra; Bryant v. Magnolia Garment Co., 307 So.2d 395 (La. App. 2d Cir.1975). Expert testimony is required to support a finding of an occupational disease. Hymes, supra; Price, supra; see also, Picard v. Dynamic Offshore Contractors, 618 So.2d 1183 (La.App. 3d Cir.1993).
The factual findings of the WCJ are subject to the manifest error rule. Alexander v. Pellerin Marble & Granite, 93-1698 (La.01/14/94), 630 So.2d 706; Green v. Conagra Broiler Co., 26,599 (La. App.2d Cir.03/01/95), 651 So.2d 335. Under this rule, the reviewing court does not decide whether the findings are right or wrong, but whether they are reasonable. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). The fact-finder's choice between two permissible views of the evidence cannot be clearly wrong. Id.
In this case, Fite claimed to suffer from bilateral carpal tunnel syndrome, lateral epicondylitis and ulnar nerve neuropathy, all of which she alleged to be occupational diseases causally related to her job as title abstractor for Louisiana Title. The WCJ determined that the carpal tunnel syndrome and lateral epicondylitis condition were caused by Fite's employment and, therefore, compensable. Louisiana Title argues that this finding was in error. The WCJ further concluded that the ulnar nerve neuropathy was not causally related to Fite's work.
Pursuant to La. R.S. 23:1031.1.A, an employee who becomes disabled because of the contraction of an occupational disease is entitled to compensation just as if he had been injured by an accident arising out of and in the course of his employment. This section further provides:
B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease.
Mindful of the statute and the applicable case law, a review of the record discloses that Fite failed to meet her burden of proof in this case, i.e., a preponderance of evidence did not show that Fite established by a reasonable probability that her ailments were caused by her work-related duties with Louisiana Title.
Fite was treated by two doctors, Dr. John Knight ("Dr. Knight") and Dr. Marion Milstead ("Dr.Milstead"). Louisiana Title selected Dr. Eric George ("Dr.George") for a second opinion of Dr. Knight's diagnosis. In her reasons for judgment, the WCJ gave more weight to the opinion of Dr. Knight than to those of Dr. Milstead or Dr. George. Fite first saw Dr. Knight in September 1997, and he subsequently performed four surgeries on her. Despite the fact that Dr. Knight treated Fite for several years and performed multiple surgeries on her, he was never deposed during the proceedings nor did he testify at trial. The only evidence of Dr. Knight's treatment of Fite was in his medical reports which were submitted as exhibits at trial.
*168 Likewise, Dr. Milstead never testified at trial or in deposition, and his opinion only appeared through his medical report as a trial exhibit. Dr. George, who examined Fite once, gave testimony at trial and provided a written report which was also admitted into evidence.
In reaching her finding that Fite's bilateral carpel tunnel syndrome and lateral epicondylitis condition were causally related to her job duties with Louisiana Title, the WCJ specifically noted Dr. Knight's report dated September 11, 1997.[2] Although the report is handwritten and difficult to translate, it appears to state Dr. Knight's opinion that Fite had "right arm pain several weeks from pulling books all day." Here, other than Dr. Knight's casual reference to Fite's activity (i.e., "pulling books all day"), the record contains no other evidence of his opinion that Fite's ailments were "due to causes and conditions characteristic of and peculiar to the particular trade." La. R.S. 23:1031B. Although Fite offered testimony that in her job, she wrote a lot, carried a heavy briefcase, lifted heavy books and typed on a computer as part of her duties, there was no medical opinion offered by Dr. Knight that linked these specific activities particularly to the ailments of which she complained. As this court previously stated in Hymes, supra at 876:
The expression `characteristic of and peculiar to,' as used in § 1031.1 B, does not mean that the disease occurs only in persons engaged in the particular employment and not otherwise found among the general public. Malone & Johnson, Workers' Compensation Law and Practice, § 220. Rather, it means that the disease must result from conditions and causes present in the employment and not from other causes to which the claimant and everyone else might have been exposed ... Stated otherwise, it means that the disease must originate from conditions in the employment that result in a hazard that distinguishes the employment in character from the general run of occupations. (Citations omitted).
....
Fite presented no evidence to indicate that her ailments were a result of conditions unique to or "characteristic of and peculiar to" her occupation.
Nor is there any evidenceother than his aforementioned statement in the September 11, 1997 reportthat Dr. Knight had any definite knowledge or information regarding the "conditions characteristic of and peculiar to" Fite's job as an abstractor at Louisiana Title that may have caused the ailments of which she complained. Clearly, under the statute, knowledge of a claimant's job duties would be crucial, because such bears on the analysis of the disease itself. See, Hymes, supra at 875. Without such information, it is unlikely that Dr. Knight could make a finding that Fite's condition was due to such "causes and conditions characteristic of and peculiar to the particular trade" of an abstractor. Furthermore, there is no evidence in the record that abstractors suffer a higher incidence of the type of conditions of which Fite complained. See, Picard supra.
*169 Additionally, the WCJ's findings are inconsistent regarding Dr. Knight's opinion. Whereas the WCJ relied upon Dr. Knight's opinion to find two of the ailments of which Fite complained to be occupational diseases caused by her employment, the WCJ then apparently rejected his opinion regarding Fite's ulnar nerve neuropathy and found that ailment not causally related to Fite's employment. The WCJ gave no reason for deviating from the opinion of Dr. Knight, whose opinion she gave "greater weight" as to Fite's bilateral carpal tunnel syndrome and lateral epicondylitis condition. We believe that this piecemeal reliance on Dr. Knight's medical opinion further calls into question the ultimate finding of the WCJ.
At trial, Fite could not point to any other medical evidence, other than that of Dr. Knight, which served to substantiate her claims that her medical condition was caused by her employment. In fact, she admitted that Dr. Milstead, who became her treating physician subsequent to Dr. Knight, never rendered an opinion as to the cause of her ailments. However, following Fite's initial appearance at trial (the trial was interrupted and resumed later), Dr. Milstead rendered a medical opinion on February 22, 2001 "that actually the [lateral epicondylitis] and the carpal tunnel had come on since the patient has really been off work and I do not feel that those two symptoms are related to the on-the-job injury...." Dr. George also opined that her conditions were not employment-related.
Finally, and significantly, Dr. Knight never testified in this matter. The jurisprudence of this court is clear that expert testimony is required to support a finding of an occupational disease. Hymes, supra; Price, supra; Picard, supra. Nothing in the record indicates an agreement by the parties that Dr. Knight's medical records would be submitted in lieu of his testimony.
It is incumbent upon a claimant to prove by a reasonable probability a causal link between an employee's occupational disease and the work-related duties, and in this case, Fite clearly failed to do so. We acknowledge that the WCJ's choice between two permissible views of evidence cannot be clearly wrong; however, in this instance, the evidence which was relied upon by the WCJ simply was not sufficient to support the claims by Fite and certainly did not rise to the necessary standard of proof required to find an occupational disease existed.
Regarding Louisiana Title's remaining assignments of error, our findings herein make unnecessary a discussion of whether or not the WCJ erred in failing to grant Louisiana Title's motion for involuntary dismissal. Furthermore, considering our finding that Fite's bilateral carpel tunnel syndrome and lateral epicondylitis condition were not proven to be causally-related to her employment, the WCJ's award of supplemental earning benefits in connection with those conditions was in error.

Conclusion
For the foregoing reasons, the trial court's judgment in favor of Kenda Fite is hereby reversed, with costs of this appeal assessed to her.
REVERSED.
BROWN, C.J., concurs with written reasons.
BROWN, C.J., Concurring.
Abstractors do pull heavy books. Dr. Knight's references were not "causal." Certainly claimant's medical problems were "characteristic and peculiar" to her work. However, in the opinion of claimant's other treating physician, Dr. Milstead, the problems "had come on since *170 the patient has really been off work" and were not work-related. On this record I feel claimant failed to meet her burden of proof.
NOTES
[1] The judgment also addressed other issues not the subject of this appeal.
[2] We note that there are two reports dated September 11, 1997 by Dr. Knight. One is handwritten and is contained in Exhibit J-1 which was admitted at trial. The other report is typed and was part of Exhibit J-3, but the record does not reflect that J-3 was ever admitted at trial nor did the parties stipulate to its admission. In the WCJ's reasons for judgment, however, she references Exhibits J-1 and J-3. Because it does not appear that Exhibit J-3 was ever properly admitted at trial, we will only consider the September 11, 1997 report that was contained in Exhibit J-1.