Judgment rendered November 17, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,111-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

LEEERIC BESS                                Plaintiff-Appellant

versus

GRAPHIC PACKAGING                           Defendant-Appellee
INTERNATIONAL, INC.

* * * * *

Appealed from the
Office of Workers' Compensation, District 1-E
Parish of Ouachita, Louisiana
Trial Court No. 18-05971

Brenza Irving Jones
Workers' Compensation Judge

* * * * *

THE HAYES LAW FIRM, PLC                     Counsel for Appellant
By:  DaShawn P. Hayes


JUGE, NAPOLITANO, GUILBEAU,                  Counsel for Appellee
RULI & FRIEMAN
By:  Keith E. Pittman

* * * * *

Before MOORE, GARRETT, and HUNTER, JJ.

**GARRETT, J.**

The plaintiff, LeeEric Bess, appeals from a ruling of the workers' compensation judge ("WCJ") granting summary judgment in favor of the defendant, Graphic Packaging International, Inc. ("Graphic"). For the following reasons, we reverse and remand for further proceedings.

## FACTS

Bess went to work for Graphic in November 2014. On September 5, 2018, he filed a disputed claim for compensation, asserting that he suffered an accident and injury to his "left and right wrist" at work on December 22, 2017. He described the accident as follows:

> In the midst of loading the straitline [sic] machine with precut cardboard stock, he lifted several sheets of precut cardstock off a pallet which at that time was above his head level. As he was lifting the cardboard stock he immediately felt a sharp pain in both wrists. Thinking the pain would subside, he continued loading the straitline [sic] machine until the pain became unbearable, and he asked to leave work because he was not feeling well.[1]

Bess sought workers' compensation benefits, penalties, attorney fees, and interest. He did not claim in his pleadings that he had an occupational disease.

On October 15, 2018, Graphic filed an answer denying that Bess was injured, had an accident at work, or was entitled to workers' compensation benefits. On January 22, 2019, Bess filed a motion for summary judgment which was denied by the workers' compensation judge on May 16, 2019.

The matter was set for trial on November 14, 2019. Bess's counsel withdrew on November 1, 2019. Bess employed new counsel, who

---

[1] In his original disputed claim for compensation, Bess claimed that he was injured on December 21, 2017. It later developed that the date he claimed the injury occurred was December 22, 2017, the Friday before Christmas.

negotiated a settlement which Bess rejected. That attorney withdrew also, and Bess continued in the workers' compensation proceedings unrepresented.

In January 2020, Bess filed an amended disputed claim for compensation, alleging that on December 22, 2017, he suffered injuries to his left and right wrists, his shoulder, and his neck. He did not describe the accident or injury, but sought medical treatment in the form of a referral to a spine specialist for cervical evaluation and treatment. Graphic answered, denying the claim. Again, he did not claim that he had an occupational disease.

In April 2020, Graphic filed a motion for summary judgment, claiming that Bess did not suffer any work injury, accident, or occupational disease, and was not entitled to workers' compensation benefits. Graphic asserted that all the medical evidence showed that no accident occurred on December 22, 2017; Bess suffered from arthritis, which is not a compensable occupational disease; and testing showed that he did not have carpal tunnel syndrome ("CTS").[2] According to Graphic, the evidence also showed that, in April 2018, several months after he stopped working at the company, Bess injured his neck while jumping a fence to get away from a dog.

A remote hearing on Graphic's motion was held on July 9, 2020. Graphic offered an affidavit from its human resources manager, two depositions from Bess, and depositions and medical records from several

---

[2] Although he never filed a disputed claim for compensation alleging that he has CTS, over the course of treatment, Bess described symptoms of the disease to several doctors. Bess was tested for the disease and the tests were normal. However, one doctor opined that Bess might have CTS, in spite of the normal test results and provided treatment to alleviate the symptoms.

2

doctors who treated Bess or who performed independent medical examinations. Bess represented himself at that time. He did not file a formal opposition to the motion for summary judgment and he did not offer any additional evidence in opposition to the motion. He advised the WCJ that he was relying upon information contained in the medical records filed by the defendant to support his contention that he had CTS and it was work-related.

Kevin A. Cuppia, the Senior Human Resources Manager for Graphic, submitted an affidavit stating that Bess was scheduled to work from 7 a.m. until 3 p.m. on December 22, 2017, but he gave notice at 8:45 a.m. that he intended to leave at 11 a.m. in accordance with his unrelated intermittent Family Medical Leave Act ("FMLA") claim. This claim was associated with swelling in Bess's knee. He clocked out at 10:50 a.m. and did not give notice to his supervisor, the plant nurse, or anyone at the plant regarding an alleged injury. A few days later, Bess contacted the company's short-term disability carrier to file a claim for an unrelated work disability regarding his hands. Bess's family physician, Dr. J. Dean Stockstill, completed paperwork for the claim, stating that arthritis in both hands was the condition preventing Bess from returning to work. The short-term disability was approved beginning January 3, 2018. Later, Bess was diagnosed with diffuse connective tissue disease, and his benefits were converted to long-term disability benefits beginning June 27, 2018.

In October 2018, Bess gave a deposition in which he said he had been experiencing pain in his hands since 2016. He also occasionally took time off from work under the FMLA because he frequently had swelling in his knee. On the day of the alleged accident and injury, Bess said that his hands

hurt and he asked to see the company nurse, who was not available. He told a coworker that his hands hurt and they concluded it was arthritis. Bess left work at 11 a.m. on December 22, 2017, under the provisions of the FMLA. He acknowledged that there was no specific incident that day involving his hands. He told his supervisor that he was leaving work, but he did not say it was because of pain in his hands.

In early January 2018, Bess went to his treating family physician, Dr. Stockstill, who opined that the claimant had arthritis which was aggravated by the repetitive use of his hands. Dr. Stockstill prescribed medicine and took him off work. Bess applied for short-term and then long-term disability benefits, through insurance associated with Graphic, based upon arthritis in his hands. Dr. Stockstill referred Bess to Dr. Jyothi Mallepalli, a rheumatologist. Bloodwork ordered by Dr. Mallepalli showed that Bess's rheumatoid factor was elevated. Dr. Mallepalli diagnosed Bess with connective tissue disease, nonspecific.

Bess said he had not worked since December 2017, the numbness and sharp pain in his hands was worse, and he could not grab or lift more than five pounds. He had applied for Social Security disability benefits.

Dr. Stockstill's medical records show that Bess came to him on January 2, 2018, complaining of arthritis in his hands. Dr. Stockstill excused him from work until January 27, 2018. On January 10, 2018, Bess saw Dr. Stockstill, who noted that Bess's arthritis was improved with rest. On January 25, 2018, Bess visited Dr. Stockstill complaining of arthritis in his hands and he was referred to Dr. Mallepalli. Bess saw Dr. Stockstill on April 16, 2018, complaining of back, neck, and right shoulder pain after jumping over a fence to get away from a dog. Bess saw Dr. Stockstill for an

4

arthritis follow-up on May 14, 2018. Dr. Stockstill noted that Bess was still seeing Dr. Mallepalli. On July 16, 2018, Bess had a follow-up visit with Dr. Stockstill regarding his disability paperwork. Bess wanted to see an orthopedic surgeon for a second opinion.

Dr. Stockstill gave a deposition on November 15, 2019. In August 2017, prior to the alleged accident, Bess saw Dr. Stockstill, complaining of right finger pain. He stated that, in September 2017, Bess complained of occasional joint pain in his knees and in his right hand. His hand was x-rayed and Dr. Stockstill diagnosed Bess with arthritis.

Dr. Stockstill stated that he saw Bess in early January 2018, for recurrent arthritic pain in both hands. Bess never told Dr. Stockstill that he had an accident and injury at work. In April 2018, Bess visited Dr. Stockstill for neck and shoulder pain after jumping over a fence. This was the first time that Bess had mentioned neck or shoulder pain to Dr. Stockstill. According to Dr. Stockstill, Dr. Mallepalli's diagnosis of connective tissue disease supported the diagnosis of arthritis. Dr. Stockstill said that Bess's condition is something that will flare up without a specific cause. The last time Dr. Stockstill saw Bess for his hands or wrists was February 26, 2019. Dr. Stockstill said that Bess's negative nerve conduction study ruled out CTS. Dr. Stockstill's opinion was that Bess's hand pain was not caused by his employment. It did appear that his employment made it worse. Rest from work helped some, but it did not "solve the pain."

Bess saw Dr. Karl K. Bilderback, an orthopedic surgeon, for an independent medical examination ("IME") on February 19, 2019. He reported to the doctor that he had an accident at work on December 22, 2017, while feeding cartons into a machine. He claimed to have constant

5

pain in both hands that was worse with activity. Bess told Dr. Bilderback that he "Googled carpal tunnel to see what the symptoms were." Dr. Bilderback said Bess presented only mild evidence of CTS, based on his symptoms, which only mildly fit the diagnosis. Dr. Bilderback said that the claim of CTS seems to be based on what the patient read. Bess's physical exam was normal. Dr. Bilderback said that Bess had digital tenosynovitis with underlying rheumatoid arthritis. He did not think that Bess was at maximum medical improvement, but he should be able to return to light duty work with limited gripping activities bilaterally.

Bess saw Dr. Ellis Cooper, his choice of orthopedic surgeon, on April 18, 2019, complaining of bilateral hand pain, numbness, tingling, and weakness. Bess told Dr. Cooper that his symptoms had been present since 2017. Bess told Dr. Cooper that his work at Graphic involved loading cardboard cartons into a machine and this eventually caused him to have numbness, tingling, and pain in his hands "which apparently was so severe that he had to stop working." Bess told Dr. Cooper that he was still employed at Graphic, but had not worked in a year and a half. He claimed the pain interfered with his sleep and was worse with prolonged driving. Dr. Cooper x-rayed Bess's hands and opined that he had bilateral CTS and possible cubital tunnel syndrome. Dr. Cooper took Bess off work and referred him to Dr. J. Eric Bicknell for an electromyography/nerve conduction study ("EMG/NCS") to determine whether the plaintiff had CTS. In a letter dated June 24, 2019, Dr. Bicknell stated that Bess's tests on both hands were completely normal and did not show that he had CTS.

Bess returned to Dr. Cooper in June 2019, who found that Bess had *possible* CTS despite the normal test results. Dr. Cooper gave Bess steroid

injections in both hands and said if he had a positive response to the injections, he might be a candidate for CTS surgery. He also prescribed braces for both hands to be worn at night.

On July 31, 2019, Dr. Bilderback wrote an addendum to his IME report after reviewing the normal results of Bess's EMG/NCS testing from June 2019. Dr. Bilderback said he did not believe that Bess had CTS. He had an inflammatory arthritic condition responsible for his longstanding tenosynovitis, which was not related to work. Dr. Bilderback observed that there were no findings or symptoms of a particular injury, Bess was at maximum medical improvement, and should be able to return to work without restrictions.

Bess saw Dr. Cooper on August 12, 2019, and reported two days of relief from the injections. At that point, Bess complained of neck pain. An x-ray showed mild spondylosis and disc narrowing at C4-C6, with no evidence of instability. Dr. Cooper stated that Bess might get some improvement with a carpal tunnel release based upon the temporary relief he got from the steroid injections. Dr. Cooper thought Bess should have his cervical spine evaluated and kept him off work until that evaluation could be completed.

On December 31, 2019, Dr. Cooper saw Bess and stated in his report that Bess had lateral CTS, despite normal diagnostic testing. He found that Bess had a good response to the steroid injections, but at that point, he was primarily complaining of pain in his neck. Dr. Cooper noted that efforts were being made to obtain a workers' compensation evaluation for Bess's neck pain. He talked with Bess about the possibility of bilateral CTS surgery "in the future if this becomes necessary." Dr. Cooper's records

never directly stated that Bess's work caused his condition, but he did consistently restrict Bess from work. Dr. Cooper was never deposed, and thus we do not have the benefit of a full explanation of his medical opinion.[3]

Dr. Steven Kautz was ordered by the Office of Workers' Compensation to perform an IME of Bess. He examined Bess on November 18, 2019. Dr. Kautz noted that the objective studies were normal and Bess's clinical symptoms did not fit the diagnosis of CTS. He thought Bess was experiencing an exacerbation of his underlying arthritis. He found there was no reason that Bess could not return to work, without restrictions, with the knowledge that an underlying arthritic condition can be exacerbated by activity-related demand. In a deposition given on February 4, 2020, Dr. Kautz stated that Bess did not have a condition related to any type of accident or work-related condition and could return to full duty at work.

Bess gave a second deposition on February 20, 2020. He was unrepresented at that time. He was still receiving long-term disability benefits of $1,000 per month, based upon arthritis in his hands. His application for Social Security disability benefits was denied in 2018, and he was appealing that decision.

Bess stated that, in January 2020, he filed an amended complaint alleging neck pain. In his deposition, Bess said his neck pain started before his hand pain, possibly in the summer of 2017, when he woke up with stiffness in his neck. He again acknowledged that he did not have a specific accident at work. He claimed that his neck pain worsened when he jumped a

---

[3] It appears from the record that a deposition for Dr. Cooper had been scheduled, but was cancelled because of the settlement discussions referenced earlier in this opinion. This information was contained in a motion to continue filed by Graphic on November 14, 2019. By that time, Bess, who has a high school education, did not have an attorney.

8

fence to get away from a dog. He had been seeing Dr. Ellis Cooper, who ordered EMG testing of Bess's hands and recommended carpal tunnel surgery. Dr. Cooper also referred Bess to a spine specialist who thought the wrist pain was coming from Bess's neck. Bess described a throbbing pain in his hands and numbness in his fingers.

After taking the matter under advisement, the WCJ held a remote court session on August 21, 2020, to announce reasons for granting summary judgment in favor of Graphic. The WCJ reasoned that Bess failed to demonstrate the presence of genuine issues of material fact in regard to his entitlement to workers' compensation benefits, and Graphic's motion for summary judgment was granted. In her reasons for judgment, the WCJ noted that the opinions of Drs. Bilderback and Kautz, who performed IMEs, were entitled to greater weight than the opinions of the other medical experts. The judgment, dismissing Bess's claims, was signed September 9, 2020. Bess obtained new counsel and appealed the decision.

## MOTION FOR SUMMARY JUDGMENT

On appeal, Bess argues that the WCJ erred in granting summary judgment in favor of Graphic. Bess maintains that information contained in the reports of his treating orthopedic physician, Dr. Cooper, creates a genuine issue of material fact regarding the causality and compensability of Bess's CTS.

### Legal Principles

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Shields v. McInnis Bros. Constr.,*

9

*Inc.*, 53,581 (La. App. 2 Cir. 3/3/21), 314 So. 3d 1079; *Bagwell v. Quality Easel Co., Inc.*, 53,282 (La. App. 2 Cir. 11/18/20), 307 So. 3d 354, *writ withdrawn*, 20-01430 (La. 1/20/21), 308 So. 3d 1148, *writ denied*, 20-01431 (La. 1/20/21), 308 So. 3d 1166.

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Schultz v. Guoth*, 10-0343 (La. 1/19/11), 57 So. 3d 1002; *Bagwell v. Quality Easel Co.*, *Inc.*, *supra*. The procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2).

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Maggio v. Parker*, 17-1112 (La. 6/27/18), 250 So. 3d 874; *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876, *cert. denied*, 574 U.S. 869, 135 S. Ct. 197, 190 L. Ed. 2d 130 (2014); *Saldana v. Larue Trucking, LLC*, 52,589 (La. App. 2 Cir. 4/10/19), 268 So. 3d 430, *writ denied*, 19-00994 (La. 10/1/19), 280 So. 3d 159.

In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or

weigh evidence. *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 17-01251 (La. 10/27/17), 228 So. 3d 1230; *Marioneaux v. Marioneaux*, 52,212 (La. App. 2 Cir. 8/15/18), 254 So. 3d 13.

The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4); *Doerle Food Servs., L.L.C. v. River Valley Foods, L.L.C.*, 52,601 (La. App. 2 Cir. 5/22/19), 273 So. 3d 656, *writ denied*, 19-01188 (La. 10/15/19), 280 So. 3d 602.

The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider. La. C.C.P. art. 966(D)(2); *Bank of Am., N.A. v. Green*, 52,044 (La. App. 2 Cir. 5/23/18), 249 So. 3d 219.

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of

11

material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1); *Doerle Food Servs., L.L.C. v. River Valley Foods, L.L.C.*, *supra*; *Collins v. Hill*, 52,457 (La. App. 2 Cir. 2/27/19), 265 So. 3d 1202.

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A). When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B); *Shields v. McInnis Bros. Constr., Inc.*, *supra*; *Doerle Food Servs., L.L.C. v. River Valley Foods, L.L.C.*, *supra*; *Bank of Am., N.A. v. Green*, *supra*.

Under the workers' compensation statutes, "accident" is defined as an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La. R.S. 23:1021(1). Injury and personal injuries include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted. *See* La. R.S.

12

23:1021(8)(a). Regarding occupational disease, La. R.S. 23:1031.1(B) provides:

> B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. *Occupational disease shall include injuries due to work-related carpal tunnel syndrome.* Degenerative disc disease, spinal stenosis, *arthritis of any type*, mental illness, and heart-related or perivascular disease are *specifically excluded from the classification of an occupational disease* for the purpose of this Section. [Emphasis supplied.]

An occupational disease is one in which there is a demonstrated causal link between the particular disease or illness and the occupation. *Arrant v. Graphic Packaging Int'l, Inc.*, 13-2878 (La. 5/5/15), 69 So. 3d 296; *Johnson v. Manitowoc Co.*, 52,264 (La. App. 2 Cir. 9/26/18), 256 So. 3d 463, *writ denied*, 18-1759 (La. 1/8/19), 260 So. 3d 592.

## Discussion

After reviewing the evidence submitted by Graphic, the WCJ found there was no showing that Bess suffered an accident and injury to his wrists or neck arising out of or in the course of his employment. By Bess's own admission in his depositions, no such accident occurred. He never told Dr. Stockstill or Dr. Cooper that he had an accident and injury at work. Instead, he enlisted Dr. Stockstill's help in obtaining short-term and long-term disability benefits based on arthritis in his hands. Arthritis is specifically excluded from the definition of an occupational disease under La. R.S. 23:1031.1(B). Bess also said in his deposition and in his visit with Dr. Stockstill that his neck injury occurred when he jumped over a fence, several months after he stopped working at Graphic. Therefore, the WCJ correctly found that there was no genuine issue of material fact regarding the

13

occurrence of an accident and injury affecting Bess's wrists and neck. Bess does not argue on appeal that the WCJ erred in rejecting his claims of an accident and injury to his hands and neck.

On appeal, Bess argues only that there is a genuine issue of material fact as to whether he suffers from CTS due to the conditions of his employment at Graphic. He contends that the WCJ erred in finding that there was no genuine issue of material fact regarding CTS and granting summary judgment in favor of Graphic.

We note, as pointed out by Graphic, that Bess has never pled, in any disputed claim for compensation, that he suffers from CTS or any other compensable occupational disease. Graphic argues on appeal that, under these circumstances, the issue of whether Bess has a compensable claim for CTS is not properly before the court. Regarding the assertion of workers' compensation claims arising from occupational diseases, La. R.S. 23:1031.1(E) provides:

> E. All claims for disability arising from an occupational disease are barred unless the employee files a claim as provided in this Chapter within one year of the date that:
>
> (1) The disease manifested itself.
>
> (2) The employee is disabled from working as a result of the disease.
>
> (3) The employee knows or has reasonable grounds to believe that the disease is occupationally related.

Although Bess never formally raised the issue of CTS in a disputed claim for compensation, the record is clear that the CTS issue was obvious to both sides and was addressed during the course of the proceedings. At the hearing on Bess's motion for summary judgment, held on April 15, 2019, his attorney stated:

14

> And essentially, Judge, what we've got here is we have an alternative argument – or motion – but essentially, we have a client that's got carpal tunnel syndrome. Everybody basically knows he's got carpal tunnel syndrome; it just hasn't been confirmed.

Graphic did not file an exception of prescription or otherwise object when the issue was informally raised in the proceedings below. The court may not supply the exception of prescription, which shall be specially pleaded. La. C.C.P. art. 927(B). In its motion for summary judgment, Graphic argued that Bess did not have CTS and included medical records and depositions in support of that argument. All evidence in this case was submitted by Graphic, including the uncertified medical records of Dr. Cooper, who opined that Bess had CTS. As stated in La. C.C.P. art. 966(D)(2), the court may consider only those documents filed in support of or in opposition to the motion for summary judgment and *shall* consider any documents to which no objection is made. In the present case, the WCJ addressed the CTS claim in deciding the motion for summary judgment. Under these circumstances, we will consider the issue on appeal.

The claimant asserting an occupational disease must prove, by a preponderance of the evidence, a disability related to an employment-related disease, that it was contracted during the course of employment, and that it is the result of the work performed. *Ball v. Wendy's Int'l, Inc.*, 36,922 (La. App. 2 Cir. 3/5/03), 839 So. 2d 1208, *writ denied*, 03-0978 (La. 5/30/03), 845 So. 2d 1056. The causal link between an employee's occupational disease and work-related duties must be established by a reasonable probability. The disease must originate from conditions in the employment that result in a hazard that distinguishes the employment in character from the general run of occupations. *Ball v. Wendy's Int'l, Inc.*, *supra*. The

15

claimant will fail if there is only a possibility that the employment caused the disease, or if other causes not related to the employment are just as likely to have caused the disease. *Johnson v. Manitowoc Co.*, *supra*; *Atkins v. DG Foods*, 48,490 (La. App. 2 Cir. 9/25/13), 125 So. 3d 530.

Bess contends that Dr. Bilderback and Dr. Cooper agreed "that the appellant suffered from the occupational disease of CTS." Bess claims this created a genuine issue of material fact and the WCJ erred in finding otherwise. Bess asserts that he established a causal link between the occupational disease of CTS and his work-related duties due to the statements of Dr. Cooper and the doctor's action in ordering that Bess not return to work. Bess urges that Dr. Cooper's opinion created a genuine issue of material fact regarding the existence and causality of the occupational disease of CTS.

The record does not support all of Bess's arguments. Drs. Stockstill, Kautz, Mallepalli, and Bilderback found that Bess had arthritis. Dr. Bicknell's testing was negative for CTS. Contrary to Bess's argument, Dr. Bilderback did not agree that the claimant had CTS. In the addendum to his IME report, made after receiving the normal EMG/NCS results, Dr. Bilderback stated that Bess *did not* have CTS. According to Dr. Bilderback, Bess had an inflammatory arthritic condition responsible for his longstanding tenosynovitis, which was not related to work. Dr. Bilderback said there were no findings or symptoms of a particular injury, Bess was at maximum medical improvement, and should be able to return to work without restrictions.

By contrast, Dr. Cooper thought, even after the normal EMG/NCS test results, that Bess had CTS, and restricted him from work. We note that

16

Graphic amassed an impressive amount of medical evidence to support its contention that Bess does not have CTS. However, the reports of Dr. Cooper, which were introduced by Graphic, contradict the opinions of Graphic's medical experts and establish a genuine issue of material fact as to whether Bess had the occupational disease of CTS that was employment-related. We have carefully examined all of the reports and the information contained therein. Although this a close case, we find that the information in these reports is sufficient to create a genuine issue of material fact. The WCJ erred in finding to the contrary. We also note that the WCJ did not fully consider Dr. Cooper's opinion and erred in assigning greater weight to the IME opinions. As stated above, on a motion for summary judgment, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. Whether Bess can actually prove that he has a compensable case of CTS, related to his employment at Graphic, is a matter for trial on the merits.

## CONCLUSION

For the reasons stated above, we reverse the ruling of the WCJ granting summary judgment in favor of the defendant, Graphic Packaging International, Inc., and remand for further proceedings. Costs in this court are assessed to the defendant, Graphic Packaging International, Inc.

**REVERSED; REMANDED FOR FURTHER PROCEEDINGS.**